06-12-27, Mr. Van Arnam. Good afternoon, Your Honor. I'm Frederick Van Arnam, Law Enforcement in Calderon, on behalf of the Appellate Courts Labs. Having determined that the legal terms of General Note 13 have been satisfied, the only duty rate that Customs could apply to the imported merchandise issued in this case was duty-free. That's because duty-free is a statutorily defined rate of duty for merchandise that satisfies the terms of the General Note. Congress was explicitly clear on this. They stated two places. They expressly stated it within the language of the General Note, and they repeated it in the Tariff. So for the clearly wrong. And for that reason, the lower court's decision needs to be reversed. Didn't the President remove the material from the pharmaceutical appendix? Yes, it had been removed from the pharmaceutical appendix. And yes, the decision that was issued by Customs was wrong. But having made that decision, right or wrong, the only duty rate that could have been stated in the ruling that was issued to my client was that the What if Customs had sent a letter to your client saying that duty is not 4.2%, but 14.2%? What would be the problem with that? Okay, we would be here before you, but the process would be slightly different. If we had, after binding ruling, like Forest Life did in this case, and we had presented Customs with all the necessary information, and Customs issued a rule to us saying, no, it wasn't 4.2%, but it was 14%. At that time, that ruling became binding. 14.2%. Okay, 14.2%. 14.1% before the 4.2%. Okay, 14.2%. And at that time, that decision becomes binding. But we'll find Customs, and I'm Forest Life, the importer. Would you be able to correct him? Is it clerical error? Well, let me explain how that would come back before Customs. Because the statute doesn't provide the import of the opportunity to go and simply change the rate of duty because of a clerical error. What the importer has to do in this situation is follow that ruling. Right or wrong, the importer has to follow that ruling. If the importer fails to follow that ruling, they're deviating from the reasonable care standard, and they will be subjected to a penalty case. Okay, so you can make it 14.2%. And they would file a protest. And if the protest was resolved administratively, the protest was denied, the case would end up with the U.S. Supreme Court of International Trade. But let's understand something here. The concept that the underlying decision was wrong is hardly novel. I mean, Customs issues hundreds, if not thousands, of rulings every year. And every year, a portion of those rulings are determined to be wrong. Sometimes the courts determine that they were wrong. Other times, Customs reviews its decisions and says, hmm, this decision was wrong. And in those situations, they have the opportunity to follow 19 U.S.C., 1625C, and revoke those rulings. But before they can do that, and the exception is what we'll get to later on, for a clerical error, they need to follow... That's the big issue. That's the big issue here. So let's get right to that issue. Because frankly, if the Customs Service's decision that the legal requirements of General Note 13 were satisfied was a result of a clerical error, then Forest Labs loses this case. However, if it wasn't a result of a clerical error, then the Customs Service was obligated to extend the procedural due process that's found in 1625C to Forest Labs, which has not occurred to date. What's a clerical error? Well, let's say, you know, instead of an A or using... Certainly. I can have the word not. Absolutely. Those would be clerical errors. Failing to refer to an up-to-date schedule. No, that would be a legal error. And let me explain why here. And I think the best way to look at this is to look at what actually happened in this case. Forest Labs applied for a binding classification rule. And in that application, it stated what the merchandise was, it gave the chemical extract services number, and it described how the merchandise was going to be used. That ruling application was submitted to the National Import Specialist Department at Customs. Now, these folks are the professionals within Customs who Customs has given the authority to issue binding tariff classification rulings. So, these are the folks who have special training and have certain special knowledge about the various products and the various headings of the tariff. So, Forest Labs application ended up on the desk of the National Import Specialist in charge of merchandise classifiable under heading 3912. And he did what he always does. He researched to determine what law was out there that would apply to the facts that were presented in Forest's application. He did his research, and he found a ruling. And he looked at this ruling, and he determined that it's precedential. It was a ruling that had been issued years earlier. It was a ruling that had been issued to a different importer, but it covered the exact same merchandise. So, determining that he had finished his legal research, he applied that precedent to the facts that were set out in Forest's binding application, and he issued the ruling. And that ruling contained two discrete but related legal conclusions. One, that Forest's merchandise is classifiable in 3912, 3900. And two, that the legal requirements of General Note 13 were satisfied, so the merchandise was duty-free. Excuse me? But that was not the law at that time, was it? It was an incorrect decision, but it still was... That was not the law, because the precedent had removed the particular classification. That's correct, but let's look at the process here. He did his research. This is what he believed to be the status of the law. The error here was not some sort of error in transcription, or this was clearly not an administrative person doing a rote function. This was the person who Customs had given the authority to issue this ruling. What he did was he didn't check to see what the current status of the law was. An analogous situation would be if an attorney filed a brief before this court, citing as authority a case that had been reversed. The fact that that attorney didn't jeopardize that case doesn't turn that error into a clerical error, and that is exactly what happened here. The National Import Specialist did his research. He found what he believed to be binding precedent. He applied that precedent to the facts that were presented to him, and he issued a ruling. The ruling was wrong. Having made that error, 19 U.S.C., 1625 C. specifically says that Customs can correct the error if they go through the notice of comment and don't apply it. When did Forrest realize that the Customs officer made a mistake? I wasn't actively involved in the matter at that time, so I can't answer exactly when they noticed it, but it came to the attention within a year because at that point Customs unilaterally decided not to follow the ruling, liquidated the entries, and forced Forrest to file a protest, arguing that, hey, if the ruling was wrong, we're not going to contest that, but we are entitled to due process, we're entitled to notice and comment, and we're entitled to not have your actions applied retroactively. And the only discretion that Congress gave to Customs here is if there was a clerical error. So again, Judge Gore, as you pointed out, this all boils down to whether what the National Inquiry Specialist did was a clerical error, and I don't see how slipshod legal research can be equated to clerical error. Does it make a difference in your view when Forrest learned about this error? No, and I'll explain why. In terms of atmospheres, it seems to. For example, you have this situation where Forrest, on the one hand, sends in this ruling request, and they get a letter back saying, you know, here's the ruling request, and Forrest looks at it, and they say on the one hand, oh gosh, we were wrong. We thought it was 4.2, but we got it wrong. It's really duty free. That's one scenario. The other scenario is they get the letter back, and it comes back and it says, oh, heck, he made a mistake, but let's run with it and go with it. Is there a different result, depending on what the facts are? Well, I think in the first situation, Forrest would have the opportunity to protest that decision and to try to bring the Customs attention by the protest route. What about the second situation? The second situation, there's nothing that I can tell in the law or the regulations that would require Forrest to bring the attention of the Customs Service that they may or may not have made a mistake. I'm not saying this happened here, but you're saying that somebody in Forrest's position can take advantage of a mistake on the part of Customs, even if it knows it's a mistake. I think so, absolutely, because they went to Customs, they presented Customs with all the necessary facts, with no misrepresentation of the facts that are presented to Customs. No question. There's no issue here as to Forrest misrepresenting anything to Customs in his application. In fact, he said the rate is 4.2%. But once Customs issued that ruling, if they want to undo that ruling, regardless of why it was right or wrong, they have to publish notice and comment unless there was a clerical error. I mean, this is what this case just boils down to, this one simple thing, was it a clerical error or not? Because that is the sole window of discretion that Congress gave to Customs for correcting these errors, unilaterally. And all we're asking for here is that Forrest, having asked for a binding ruling in good faith, having given Customs all the necessary information, having gotten a binding ruling back, having relied on that ruling, having made business decisions going forward on that ruling, that if Customs elects to change the holding of that ruling, that they follow 1625c. But I thought you had deposited it at 4.2%. Excuse me, sir? You had deposited it at 4.2%. Well, what happened was that we made entry in accordance with the ruling, which was that it was duty-free, and Customs liquidated the entry at what's called a rate advance. They came back and said, no, you owe 4.2%. They basically violated the terms of the ruling, forcing Forrest to pay the money, file the protest. Well, can't you argue that in a protest? Well, we did argue it in a protest, and Customs said it was a clerical error. They said it was a clerical error. They don't explain in their protest decision what the clerical error was, but they said there was a clerical error in the CAS number, even though that ruling, as well as our application, clearly showed that we represented what the CAS number was for that particular product. Your Honor, as I see I'm into my rebuttal time, I'd like to reserve some unless there's any additional questions. We'll stand before you. Your Honor, what's a clerical error? Well, before I get to that, I want to ask you a question. But contrary to what Mr. Van Arnam just asserted, this case is not boiled down to whether there was a clerical error or whether there wasn't a clerical error. This case is actually, if we decide whether there was a clerical error, you actually have to decide whether 1625C was even implicated here. You can't determine whether it was violated before you determine whether it's implicated. And this is going to be a long way to get to what is a clerical error because I don't think it's all that necessary here. A clerical error is undefined in the statute. A clerical error can be any of the definitions we put in our brief or any definition that you can find in an authoritative source. This was a clerical error. Getting back to why 1625C was not violated here because it doesn't come into play, 1625C identifies three ways in which customs can express an official policy or position. First way is by an interpretive ruling. Second way is by an interpretive decision. And the third way is by a treatment previously accorded to substantially identical transactions. What would we certainly have had here, a rule of decision? No, you wouldn't have had any of these three here because there was no official policy or position on duty rates stated in the New York ruling. It was an interpretive ruling. It was an interpretive ruling on classification. The position or policy stated in that ruling indicated how the merchandise was to be classified. And in fact, the ruling agreed with the request. But classification is not an issue here. No, it's not an issue. The only part of the degree is the classification. Essentially, yes, although which column within the tariff, that's sort of part of the classification whether there's a K before the subheading or there's not a K before the subheading. But how would you correct an error, as I asked before, if the letter from customs had come up at 14.2% instead of 14.2%? How would you correct it? How would you correct it? By when the merchandise came in, liquidating it at the- 14.2%? No, at the rate that it's statutorily required for it to be liquidated at. Well, why not at the letter rate? Because there's no official- because it's wrong. It's simply wrong. So is that clearly a clerical error? Yes, it is a clerical error. However, it is not the type of error. That's not the type of error that would even implicate 1625C. And I disagree with Mr. Van Arnam that if the ruling had said 14.2% that we would actually end up back here because what customs would have done is exactly what they did here. They would have seen that this merchandise was classifiable as the ruling indicated, and they would have assessed the appropriate duty rate at the time of entry, which here is 4.2%. So you would not have the statutory authority to assess the duty at 14.2%? Absolutely not. And I can guarantee that if customs- if the ruling said 14.2% and customs did what they did here, which was assess the appropriate duty rate, Forest Labs was not going to send their attorneys in to complain that we violated the ruling before they actually could assess the 4.2% rate as opposed to the 14.2% rate. They'd have to change the rule. So are you saying that customs could not assess the 14.2% rate in the same manner they couldn't assess the zero rate? Absolutely. They're statutorily bound to assess the duty rates that Congress put into this tariff statute. But you said this is an intrepid ruling, so why isn't it intrepid by 1625, which would lead us to the question of clerical error? Because not every word in a customs ruling necessarily is an official position. The same way not every word in one of your decisions is a holding. There's the concept of dicta in judicial decisions. And here the request asked for something very specific. It asked for how this merchandise is to be classified. And it even suggested the appropriate classification. Customs agreed with that. Customs has the authority to determine the proper classification. Customs does not have the authority to change the duty rate associated with a particular tariff provision. Let's assume for the moment that one takes the position that this is not a clerical error, and it doesn't seem to me to be clerical error. What about the provisions of the regulation, 19 CFR section 177.9B1, which says, and we have a ruling letter here, right? You have a ruling letter, yes. Which says the application of a ruling letter by a Customs Service field office to the transaction to which it is reported to a lady, so far we're in the, we line up, right? Yes. Is subject to the verification of the facts incorporated in the ruling letter. The comparison of the transaction described therein to the actual transaction and the satisfaction of any conditions on which the ruling was based. Now, doesn't that apply here in the sense that verification of facts, one of the facts is what is stated in the tariff schedule as the correct rate. So doesn't that sort of, if in fact, doesn't that give the agency, in other words, can you say that the agency was acting in accordance with that and verified the facts were as they lined up? Sure. You can also, not beyond the duty rate, there's also that regulation also talks about meeting any conditions upon which the ruling was based. There were conditions under General No. 13 that must be met. As Mr. Van Arnam concedes at this point, they can't be met here. So the ruling certainly could be the facts inherent in the ruling, the duty rate can be changed, as well as the conditions upon which it was based. I agree with Mr. Van Arnam that, at least speaking just for myself, it's hard to see how this is a clerical error. It more seems to be a mistake of fact. In other words, at the point when the customs officer was responding to the request for a ruling, the fact was that the duty was 4.2, not 0. The customs officer misapprehended that fact. That's true. The fact was that there was no K there. There was no K there. There was also no K. Well, there was also no K in the original ruling that the National Inquiry Specialist relied on. But in your sealant decision, which I believe was written by you, Judge Schell, you indicate the policy reasons behind 1625C. 1625C is intended to give importers the opportunity to notify importers of a forthcoming change in customs policy or position, an official policy or position, so that the importer or other interested parties won't be caught unaware when customs in fact modifies the policy or position. But customs can't take a position or modify a position that it's not authorized to do. In other words, Congress sets duty rates. Customs can't violate that and decide that, well, I like this importer. I'm going to give them a special duty rate, something other than what corresponds to the provision in the tariff. We recognize and force labs say, well, sealant doesn't apply here because the facts are very different. There was a judicial decision. Well, sure. We know the facts are different. It doesn't mean that there's no guidance to be had in your sealant decision here. There would be no reason for notice and comment to determine whether or not this type of merchandise is entitled to duty-free treatment or to determine whether customs can change a policy or a position that it's not authorized to take. Customs was required to liquidate the merchandise at the rate corresponding to the tariff provision at the time of entry. They don't have any wiggle room in the assessment that they can make for a given tariff provision. And so 1625C really isn't even reached here because as force labs even acknowledges in their brief, rulings reflect customs official positions. What if we did reach 1625C? We're dealing with a clerical error. Well, it actually is a clerical error, but only if you get that far. I don't think you need to get that far, but it is because really this is an – it was an – In the presence or in absence of a claim, one letter? No. No, that's not here. There it was really. He inadvertently copied erroneous information, outdated information, but it did not affect the intent of the ruling. The intent was to respond to the request. The request, as you can see, which is – it's in the appendix. The request itself twice asked for a classification of this merchandise. So I have lots more time if you have any more questions. It was classified, and then all of a sudden they came up with the wrong rate. It was properly classified. There's no dispute. But it can't beat the conditions for General No. 13. And certainly it was error for Mr. Cantone to rely on outdated information, but the intent of his drafting was to classify this merchandise correctly, and there's no dispute that was done. And that is really the entire official position contained in that ruling. With that, the reliance argument, what if they relied upon the letter, the rule of the letter? Well, detrimental reliance is fact-based, and they moved for judgment on the pleadings. They'd probably have to remand for some sort of discovery. They'd have to prove that they detrimentally relied on the ruling. But I don't know that they really can because they really do not act in good faith. I appreciated your question, Mr. Van Arnam, about when Forest Labs realized the mistake because they had to have recognized the mistake when they received the ruling when it didn't really conform to the request. They were expecting a particular ruling that conformed exactly to their request. They didn't get that. They had to have known at that point that that mistake had been made, and they certainly could have brought that to Customs' attention. They did not have to robotically apply the ruling no matter what it said. If they knew there was a mistake there, there are means by which Customs and the importers can talk to each other. Customs and the importers talk to each other all the time. And certainly Forest Labs or its counsel could have gotten a hold of the national court specialist or the import specialist of the court and said, hey, we think there's a mistake here. They didn't do that. That's not good faith. Mr. Ramon, in response to your discussion while you were chatting with Judge D'Arsa, it appears that the Court of International Trade did not find that there was a clerical error. They found it in each—well, I assume they found it in each reach, but they didn't reach it. So there's no finding that there was a clerical error. That seems to be a very clear fact issue. I mean, I guess what I'm saying is if the case came down to that question, whether or not there was a clerical issue here— I'm sorry, a clerical error here, it would seem that that's a fact issue. And you're saying we don't get to that, I realize, but it does seem that if one did have to get to it, that that's a fact issue. But I think you've got everything that you need here to determine whether or not that there was a clerical error. You've got Mr. Cantone's declaration, which the court didn't need to look at because he found based on the pleadings, so he never looked to the extrinsic evidence. We can't assume that—since you're here as de novo, we can't assume you'll do the same. No, I was just noting it doesn't seem that the court found that. No, the court didn't get into that at all. The court accepted that customs just does not have the authority to assume an official position on something they have no authority to assume. And on the pleadings, it was very clear that customs—that the misstatement, the duty rate statement in the New York ruling was just something that customs could not take an official position on. So, just to conclude, because customs had no authority to handle the liquidation of force of entries in any other manner or to assess duty at any rate other than what they did, the assessment at 4.2 percent was right. And we ask that you affirm the decision of the Court of International Trade. Thank you. Thank you very much. Before I clarify one thing, you said, was there a K there? Well, for the tariff line 3912, 3900 for customs classified as merchandise, if you scroll over and look in the special duty rate column, there is a K there. There is also the special indicators for, I think, six other special trade programs there, too. All seven of those special trade programs have specific rules, legal requirements, and if the merchandise satisfies those legal requirements, then those duty rates, in this case duty-free, apply. So, for Ms. Rubin to say that customs has misstated the duty rate is just not so. Customs took a shortcut. In doing that shortcut, they determined that the legal requirements, General Note 13, have been satisfied. If they had determined that the legal... Ms. Rubin, let me ask you, I'm inclined to think, I mean, again, speaking just for myself, that this maybe is not clerical error. Okay, there certainly is no finding to that effect by the Court of International Trade, as Ms. Rubin acknowledges, but what about this regulation that I discussed with her, Section 177.9b, that does talk about verification of facts incorporated into the Rubin letter, and obviously a fact that was necessarily incorporated here is the proposition that the statement was 0% rather than 4.2%. A fact is what, you know, a fact that's incorporated is what is stated on the schedule. And what is your response to that? Well, first, I think the fact that it was stated was that the legal requirements of General Note 13 have been satisfied. Having made that legal conclusion... No, I'm talking about what is stated, what in fact... In other words, Mr. whoever... Mr. Cantone. Mr. Petronio? Cantone. Mr. Cantone. Mr. Cantone, under... The fact that he had in his mind was that the correct duty for this classification, the 9, whatever it was, was 0%, right? Well, that's the fact he had in his mind. The fact he had in his mind was that it was 0% for that classification, for that product satisfying the terms of that special tariff program. We're talking about General Note 13, which implemented the agreement on trade pharmaceutical products. If he had said it satisfied the terms of General Note 12, he would have said it's duty free pursuant to NAFTA. These are legal decisions that he made. Having made those decisions, Congress mandated that the duty rate would be, in this situation, free. What about the relevance or irrelevance of 1625C? Well, I think in this situation it's highly relevant. Having made a decision that was not based on a clerical error, that was clearly one that was a legal error in our opinion, I believe Customs was obligated to follow the express mandate that Congress set out in 1625C, which is Customs shall publish notice that they're going to revoke or modify, that Customs shall allow not just Forest Lafayette but the importing community as a whole an opportunity to respond, that Customs shall publish its new ruling or decision, and that that ruling or decision will not be applied until 60 days after the publication date, i.e. it won't be applied retroactively. What happened here? Customs unilaterally decided to change the terms of their ruling, and they applied that decision retroactively. And that's clearly contrary to what Congress said they were supposed to do, with one limited exception. That's if there's a clerical error. I'm sorry, I don't have a lot of time here. There's not enough time, President Takaya, for your case. Thank you very much.